# In the United States Court of Federal Claims

No. 20-66C
Filed: December 1, 2020
FOR PUBLICATION

| | |
|---|---|
| **LARRY LANDGRAF,**<br><br>                *Plaintiff*,<br><br>v.<br><br>**UNITED STATES,**<br><br>                *Defendant*. | Keywords: Motion to Dismiss; Rule 12(b)(1); Jurisdiction; Rule 12(b)(6); sua sponte; Failure to State a Claim; Breach; Wetlands Reserve Program; Contract Formation; Preliminary Wetlands Reserve Plan of Operations; Promissory Estoppel |

*Larry Landgraf*, Tivoli, TX, *pro se*.

*Rafique O. Anderson*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for the defendant.

## MEMORANDUM OPINION

***HERTLING*, Judge**

The plaintiff, Larry Landgraf, alleges that the Natural Resources Conservation Service ("the Service" or "NRCS") breached a contract for removal of noxious brush from his property. The defendant, the United States, moves to dismiss under Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") for lack of subject-matter jurisdiction. Because the plaintiff did not have a contract with the United States, the Court grants the defendant's motion to dismiss. The Court *sua sponte* dismisses under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted.

## I.   BACKGROUND[1]

### A.   Program Framework: Wetlands Reserve Program

Congress established the Wetlands Reserve Program ("WRP") to restore and protect wetlands in the United States. Food Security Act of 1985, Pub. L. No. 99-198, Title XII, § 1237,

---

[1] Because the defendant moves to dismiss under RCFC 12(b)(1), the facts as alleged in the plaintiff's complaint are assumed to be true. This recitation of the facts does not therefore constitute findings of fact; rather, the Court provides a recitation of the facts as alleged by the

99 Stat. 1354 (1985), *repealed by* Agricultural Act of 2014, Pub. L. No. 113-79, § 2703(a), 128 Stat. 767 (2014).  The WRP enabled the Service to purchase conservation easements from private landowners and share with the landowners the cost of restoring the easement properties for conservation, recreational, and wildlife purposes.

The WRP Manual from December 2010 outlined the application and enrollment process relevant to this case.  (*See* Def.'s Renewed Mot. to Dismiss, App. at 72-140.)  Property owners interested in participating in the WRP had to apply to the NRCS.  WRP Manual § 514.11(A).  The Service then determined whether the landowner was eligible to participate and whether the property met certain criteria.  *Id.* §§ 514.12 & 514.14.  The NRCS State Conservationist, in consultation with the U.S. Fish and Wildlife Service and the State Technical Committee, ranked applications for enrollment as part of the Service's onsite field-investigation process.  *Id.* §§ 514.20-514.23.

After a landowner expressed interest in the WRP, the Service conducted onsite visits of the property with the landowner as part of the application process.  Following these onsite visits, the Service would begin developing a preliminary Wetlands Reserve Plan of Operations ("WRPO"), also known as the preliminary WRP Restoration Plan.[2]  *Id.* § 514.44(A)(1).  The preliminary WRPO enabled the Service to provide to the landowner information to "[a]llow the landowner to understand the project's anticipated scope and effect" and to "[a]llow NRCS to develop a reasonable cost estimate for ranking purposes."  *Id.* § 514.44(B)(2)(i).  The information contained in the preliminary WRPO included "[a] clear objective and understanding about desired outcome of restoration activities" and a "[l]ist of planned conservation practices, measures and activities, estimated quantities, and estimated costs."  *Id.* § 514.22(B)(12)(i) & (iii).  The landowner had to agree to the implementation of a WRPO to enroll in the WRP, but the NRCS could "review, revise, and supplement the WRPO, as needed, to ensure that program goals [were] fully and effectively achieved."  *Id.* §§ 514.40(D), 514.41(A)(1).  Once the NRCS acquired an easement, the WRPO remained the operative document but "does not supersede or

---

plaintiff.  In considering a motion to dismiss under RCFC 12(b), the Court may also consider documents that are "'integral'" to the plaintiff's claim.  *See Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)).  The Court considers as integral to the plaintiff's claims the alleged contract submitted by the plaintiff, and the easement deed and the Wetlands Reserve Program Manual, copies of which were provided by the defendant.

[2] With no discernable difference, the Manual inconsistently and without explanation used the phrase "WRPO" to mean both "Wetlands Reserve Plan of Operations" and "Wetlands Restoration Plan of Operations."  *Compare* § 514.44 *with* § 514.51.  The defendant asserts that the preliminary WRP Restoration Plan is also called the preliminary WRPO.  The plaintiff does not challenge that characterization.  Accordingly, the Court uses "preliminary WRPO" and "preliminary WRP Restoration Plan" interchangeably.

modify the rights acquired by NRCS under the terms of the warranty easement deed." *Id.* § 514.40(B).

When an application had been selected for funding, the Service would send the landowner an offer of enrollment letter. *Id.* § 514.31(C). The letter would "clearly indicate that the application ha[d] been selected for enrollment and that NRCS [wa]s making an offer to purchase the easement for the compensation amount indicated on the [form] provided with the letter." *Id.* § 514.31(C)(iii). To accept the offer, the landowner was generally allowed 15 calendar days to sign and return the document. *Id.*

### B. Facts

The plaintiff alleges that he and two of his neighbors conveyed conservation easements to the Service, and that he contracted with the Service for the removal of noxious brush from his property subject to the easement. (Pl.'s Compl. at 2.)

In 2013, the plaintiff and the NRCS District Conservationist, Will Blackwell, signed a document titled "Preliminary WRP Restoration Plan." (Pl.'s Resp. to Mot. to Dismiss at 6-8.) This document, referred to by the plaintiff as "Contract A," is the alleged contract at issue in this case. The three-page document contains signed and dated signature blocks on the final page. (*Id.* at 8.) The plaintiff's signature line is labeled "Certification of Participants." (*Id.*) Both signatures are dated April 23, 2013. (*Id.*)

A box below the title labeled "Objective" provides that "[r]estoration practices will be implemented with intent of restoring vertical heterogeneity to a native monoculture stand of gulf cordgrass, using prescribed fire and brush mgmt., resulting in increased diversity of habitat for the species of concern; Whooping Crane. (Grus Americana)." (*Id.* at 6.)

The body of the document starts with the heading "Wildlife." (*Id.*) Indented below this heading is a page-width box containing the bold, centered text "Tract: 564." (*Id.*) Below that box, also indented from the "Wildlife" heading, appear seven sections, each titled with an activity or work (*e.g.*, "Brush Management," "Fence"). (*Id.* at 6-7.) Each section contains a description followed by a table showing a "Planned Amount" in acres or feet for field "1" along with a year and a month (all specify September). (*Id.*) Each table also contains blank spaces for an "Applied Amount" and a date. (*Id.*)

The "Prescribed Burning" section specifically provides:

> Controlled burns will be conducted as needed to maintain vigor of grass cover, suppress the growth of undesirable species, remove any dead or decaying woody plants and/or remove excessive thatch buildup. Burns will be conducted according to an NRCS approved prescribed burning management plan. Contact the NRCS office for assistance and a prescribed burn plan. [The Texas Commission on Environmental Quality] will have to approve the Burn Plan as well since Smooth Gulf Cordgrass is in the burn unit.

(*Id.* at 7.) That section specifies a cost rate of $10.50 per acre, and the table indicates 163.16 acres planned for 2016. (*Id.*)

In 2015, the plaintiff enrolled in the WRP and sold to the United States a perpetual easement of 163.16 acres of land in Tivoli, Texas. (Def.'s Renewed Mot. to Dismiss, App. at 1-18.) The United States paid the plaintiff $285,530 for the easement. (*Id.* at 2.)

The easement deed limits the rights reserved to the plaintiff:

> [T]he Grantor(s), hereby grants and conveys with general warranty of title to the UNITED STATES OF AMERICA and its assigns . . . in perpetuity, all rights, title and interest in the lands comprising the easement area described in Part I and appurtenant rights of access to the easement area, but reserving to the Landowner only those rights, title, and interest expressly enumerated in Part II. It is the intention of the Landowner to convey and relinquish any and all other property rights not so reserved.

(*Id.*)

Part II of the easement deed provides that the plaintiff reserved the right to title, quiet enjoyment, control of access, recreational uses, subsurface resources, and water uses and water rights. (*Id.* at 3-4.) Each reserved right is "[s]ubject to the rights, title, and interest conveyed by this easement deed to the United States, including the restoration, protection, management, maintenance, enhancement, and monitoring of the wetland and other natural values of the easement area . . . ." (*Id.* at 3.)

Part V of the easement deed provides the rights of the United States. Those rights include the management activities on the land, access to the land, management of the easement, and enforcement of the easement. (*Id.* at 6.) The right to management activities includes "the right to enter the easement area to undertake, on a cost-share basis with the Landowner or other entity as determined by the United States, any activities to restore, protect, manage, maintain, enhance, and monitor the wetland and other natural values of the easement area." (*Id.*)

Part VI of the easement deed provides that "[a]ll rights in the easement area not reserved by the Landowner shall be deemed acquired by the United States." (*Id.* at 7.) The plaintiff's reserved rights are further limited under Part VI:

> Any ambiguities in this easement deed shall be construed in favor of the United States to effect the wetland and conservation purposes for which this easement deed is being acquired. The property rights of the United States acquired under this easement shall be unaffected by any subsequent amendments or repeal of the Wetlands Reserve Program.

(*Id.*)

In May 2017, the Service directed a contractor to uproot noxious brush on the plaintiff's neighbor's property and leave it in place. (Pl.'s Compl. at 2.) In the succeeding months, the contractor complied. (*Id.*) In August 2017, Hurricane Harvey's storm-surge washed uprooted brush from the neighbor's easement property onto the plaintiff's property. (*Id.* at 3.) The plaintiff alleges that this uprooted brush from his neighbor's property rendered two-thirds of the plaintiff's property impassable and useless pending removal of the brush. (*Id.* at 5.)

### C.     **Procedural History**

In 2018, the plaintiff sued the NRCS under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2674, in the U.S. District Court for the Southern District of Texas. The district court dismissed his complaint for lack of subject-matter jurisdiction. *Landgraf v. National* [sic] *Res. Conservation Serv.*, No. 18-CV-61, Memorandum and Order, Apr. 9, 2019 (S.D. Tex.). The plaintiff filed a second lawsuit under the FTCA against the United States in district court, alleging that the preliminary WRP Restoration Plan was a contract with the United States. The district court again dismissed this second complaint for lack of subject-matter jurisdiction. *Landgraf v. United States*, No. 19-CV-34, Memorandum and Order, Aug. 8, 2019 (S.D. Tex.).

In 2020, the plaintiff filed a complaint in this Court for breach of contract. The plaintiff alleged that he had contracted with the Service, which promised under the contract to remove noxious brush from his property. (Pl.'s Compl. at 2.) The plaintiff further alleged that the Service breached that contract by leaving uprooted brush on the property. (*Id.* at 5.) He sought removal of the brush, dissolution of the Service's easement, $250,000 in damages, and attorneys' fees. (*Id.* at 5-6.) The defendant moved to dismiss for lack of subject-matter jurisdiction and failure to state a claim. In its initial motion to dismiss, the defendant did not challenge the existence of the alleged contract.

In May 2020, the Court found, for the purposes of the defendant's motion to dismiss, that the "Prescribed Burning" provision of the alleged contract provided a sufficient basis to infer reasonably that the Service had a contractual duty to remove brush from the plaintiff's property. *Landgraf v. United States*, No. 20-66C, 2020 WL 2466138 at *4 (May 13, 2020). The impassable state of his property and the Service's abandonment of its removal efforts provided a reasonable basis to infer a breach of contract, and the complaint therefore met the plausibility standard to state a claim upon which relief could be granted. *Id.* at *8. The Court denied the defendant's motion to dismiss but limited discovery to the following issues: (1) whether the "Prescribed Burning" provision of the preliminary WRP Restoration Plan document created a contractual duty for the defendant to remove uprooted brush originating on his neighbor's property from the plaintiff's property; (2) whether the flooding that deposited the brush on the plaintiff's property was foreseeable when the alleged contract was executed; and (3) other affirmative defenses that the defendant intends to assert in its answer to the complaint. *Id.*

The defendant now renews its motion to dismiss.[3]  In so moving, the defendant offers additional context for the alleged contract.

## II. JURISDICTION

The defendant moves to dismiss pursuant to RCFC 12(b)(1) for lack of subject-matter jurisdiction because the preliminary WRPO was not a contract between the plaintiff and the United States.

As a *pro se* plaintiff, the plaintiff's pleadings are entitled to a more liberal construction than the Court would give to pleadings prepared by a lawyer.  *See Haines v. Kerner*, 404 U.S. 519 (1972).  Such a liberal construction does not, however, divest a *pro se* plaintiff of the responsibility of demonstrating that he has satisfied the jurisdictional requirements that limit the types of claims this court may entertain.  *See, e.g.*, *Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987); *Hale v. United States*, 143 Fed. Cl. 180, 184 (2019).

The Tucker Act, 28 U.S.C. § 1491(a), vests this court with jurisdiction over claims that are founded on an express or implied contract with the United States.  *United States v. Navajo Nation*, 556 U.S. 287, 289-90 (2009).  To establish jurisdiction, a plaintiff only must allege the existence of a contract with the government.  *Gould, Inc. v. United* States, 67 F.3d 925, 929 (Fed. Cir. 1995).  If the plaintiff fails to establish the existence of the alleged contract, the Court must dismiss the complaint for failure to state a claim, rather than for lack of jurisdiction.  *Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1354 (Fed. Cir. 2011).  Plainly frivolous contract claims may be dismissed for lack of subject-matter jurisdiction, although "the Supreme Court has made clear that such jurisdictional dismissals for frivolousness must be 'confin[ed]' to cases 'that are very plain.'"  *Lewis v. United States*, 70 F.3d 597, 603-04 (Fed. Cir. 1995) (quoting *Hart v. B.F. Keith Vaudeville Exch.*, 262 U.S. 271, 274 (1923)).

The plaintiff's contract claim is not plainly frivolous.  As the Court already found in its May 2020 opinion denying the defendant's initial motion to dismiss, the "Prescribed Burning" provision provides a sufficient basis on which reasonably to infer that the Service had a contractual duty to remove brush from the plaintiff's property.  *Landgraf*, 2020 WL 2466138 at *8.  The plaintiff and the NRCS District Conservationist both signed the preliminary WRPO.  In that document, the "Prescribed Burning" provision provided that the NRCS would conduct controlled burns "as needed to maintain [the] vigor of grass cover, suppress the growth of undesirable species, remove any dead or decaying woody plants and/or remove excessive thatch buildup."  (Pl.'s Resp. to Mot. to Dismiss at 7.)  The plaintiff alleges that the preliminary WRPO is a contract, and that the defendant has a contractual duty under that contract to remove brush from his property.  The plaintiff has made a non-frivolous allegation of the existence of a

---

[3] Concurrently with its renewed motion to dismiss, the defendant moved to suspend discovery; the Court previously granted that motion, pending its resolution of the renewed motion to dismiss.

contract between himself and the defendant. That allegation is enough, on its face, to trigger the Tucker Act's grant of jurisdiction.

## III.   FAILURE TO STATE A CLAIM

In its renewed motion to dismiss, the defendant has provided additional context for the preliminary WRPO, including the easement deed and the WRP Manual. Given that additional context, the Court reconsiders the sufficiency of the plaintiff's claim. The Court cannot provide the relief the plaintiff seeks if he does not have a contract with the government. The plaintiff's failure to establish the existence of the alleged contract on the merits, therefore, is grounds to dismiss for failure to state a claim.

When it is clear from the pleadings that "no relief could be granted under any set of facts that could be proved consistent with the allegations," a court may dismiss a claim *sua sponte* under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted. *Anaheim Gardens v. United States*, 444 F.3d 1309, 1315 (Fed. Cir. 2006).

For a claim to avoid dismissal, it must be "'plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To test a claim's plausibility, the court sets aside the complaint's legal conclusions and focuses on the facts alleged in the complaint, accepting them as true. *See id.*; *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1380 (Fed. Cir. 2019). If these facts, when accepted as true, allow the court reasonably to infer "that the defendant is liable for the misconduct alleged," the claim is plausible. *Iqbal*, 556 U.S. at 678. "Plausible" means more than "possible"; plausibility requires more than facts that are "'merely consistent with'" a defendant's liability. *Id.* (quoting *Twombly*, 550 U.S. at 557). The court "must presume that the facts are as alleged in the complaint, and make all reasonable inferences in favor of the plaintiff." *Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009).

### A.   Alleged Contract

The plaintiff alleges that he entered into a contract with the Service for the removal of brush from his property. To prove the existence of that contract, he must demonstrate four elements: "(1) mutuality of intent to contract; (2) offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States." *Hometown Fin., Inc. v. United States*, 409 F.3d 1360, 1364 (Fed. Cir. 2005).

To form a contract, there must be "[a]n objective manifestation of voluntary, mutual assent." *American Fed. Bank, FSB v. United States*, 58 Fed. Cl. 429, 436 (2003) (citing *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003)). Such mutuality of assent requires the plaintiff to "show, by objective evidence, the existence of an offer and a reciprocal acceptance." *Anderson*, 344 F.3d at 1353.

An offer is "'the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" *Id.* (quoting Restatement (Second) of Contracts § 24 (1981)). The plaintiff argues that Will

Blackwell, the NRCS District Conservationist, visited the plaintiff multiple times and assured the plaintiff the firm price of $1,750.00 per acre upon entry into the program. The plaintiff's claim, however, does not dispute those assurances; instead, the plaintiff is alleging a breach of the terms in the preliminary WRPO that he and Mr. Blackwell later signed. The defendant argues that the Service did not make an offer when it presented the plaintiff with the preliminary WRPO as part of the WRP application process. Rather, the defendant argues that the offer was to acquire the easement, and the preliminary WRPO was not part of that offer.

The regulatory framework indicates that the Service did not intend to be bound by the terms of the preliminary WRPO. To enroll in the WRP, the landowner was required to apply. 7 C.F.R. § 1467.5(a). As part of the application process, the landowner had to consent to the NRCS entering his property to conduct an assessment that led to the development of the preliminary WRPO. *Id.* § 1467.5(b). The preliminary WRPO provided the prospective parties to the easement with information that would "[a]llow the landowner to understand the project's anticipated scope and effect" and would "[a]llow NRCS to develop a reasonable cost estimate for ranking purposes." WRP Manual § 514.44(B)(2)(i). The information included "[a] clear objective and understanding about desired outcome of restoration activities" and a "[l]ist of planned conservation practices, measures and activities, estimated quantities, and estimated costs." *Id.* § 514.22(B)(12)(i) & (iii). Ultimately, the landowner had to agree to the implementation of a WRPO to enroll in the WRP. *Id.* § 514.40(D); 7 C.F.R. § 1467.4(a)(2).

The WRPO, however, remains changeable. The regulation and the Manual provided specifically that the "NRCS will review, revise, and supplement the WRPO as needed throughout the duration of the enrollment to ensure that program goals are fully and effectively achieved." 7 C.F.R. § 1467.12(b); WRP Manual § 514.41(A)(1). Because the NRCS retained the ability to modify the WRPO at its own discretion, the NRCS could not have intended to be bound by the preliminary WRPO's terms. The preliminary WRPO provided the plaintiff only with "the project's *anticipated* scope and effect." WRP Manual § 514.44(B)(2)(i) (emphasis added).

Under the regulatory framework outlined above, the document the plaintiff refers to as "Contract A" that sets forth the activities the Service will undertake on the land on which it acquires the easement is simply a statement of the anticipated work to be carried out; it is not a firm offer, under the terms of the regulations and Manual. The preliminary WRPO is what it claims to be: a "preliminary" document outlining the planned activities of the NRCS. The Service did not make an offer to the plaintiff to be bound in perpetuity to carry out the conservation activities outlined on the preliminary WRPO because under the regulations it could not have made such an offer.

Without an offer from the Service, the plaintiff is unable to show an acceptance. Acceptance is the "'manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer.'" *Anderson*, 344 F.3d at 1355 (quoting Restatement (Second) of Contracts § 50(1)). The Ninth Circuit has noted that the WRP statute, 16 U.S.C. § 3837(a) (repealed 2014), and the corresponding regulation, 7 C.F.R. § 1467.4(a), required the landowner to "agree to the implementation of a conservation plan. It d[id] not require that [the landowner]

8

assent to the terms of the particular conservation plan chosen." *Big Meadows Grazing Ass'n v. United States ex rel. Veneman*, 344 F.3d 940, 944 (9th Cir. 2003).

The plaintiff here applied to participate in the WRP and agreed to the preliminary WRPO as part of the application process. Even if he intended to assent to the particular conservation plan, he could not have accepted an offer—the Service did not make one.

In the absence of an offer and a reciprocal acceptance, the plaintiff has failed to establish the mutuality of intent to contract.

The plaintiff also cannot show that there was consideration. As the Federal Circuit has held, "[c]onsideration generally requires bargained-for exchange . . . When the promisor may choose to perform based solely on whim, then the promise will not serve as consideration." *NSK Ltd. v. United States*, 115 F.3d 965, 975 (Fed. Cir. 1997) (citations omitted); *see also Woll v. United States*, 45 Fed. Cl. 475, 478 (1999) ("Whenever one of the parties to an agreement can terminate without consequence, an enforceable contract does not exist."). The only agreement between the plaintiff and the Service at the time the preliminary WRPO was signed was that the plaintiff would apply for the WRP, and that the Service would evaluate that application. Before the plaintiff and the Service executed the easement, the Service retained the right to deny the plaintiff's application to participate in the WRP for any reason. 7 C.F.R. § 1467.7(e). Because the Service could choose not to perform (*i.e.*, evaluate the plaintiff's application), there was no consideration. The Service could also have rejected the plaintiff's application, in which case, again, the preliminary WRPO would have had no effect.

Even after the plaintiff's application was accepted and the parties agreed to the easement, the Service did not promise to perform the conservation activities specifically outlined in the preliminary WRPO. The Service was free under the regulations to modify at its full discretion the preliminary WRPO as needed to further the program's goals. *Id.* § 1467.12(b); WRP Manual § 514.41(A)(1). The Service's retained right to choose whether to perform negates the plaintiff's ability to show any consideration in this case.

In sum, the plaintiff has not established the existence of a contract with the government, other than the easement. The Court now reviews whether the easement deed incorporates the terms of the preliminary WRPO.

### B.     Easement Deed

The plaintiff did ultimately contract with the Service for a conservation easement on his property. (*See* Def.'s Renewed Mot. to Dismiss, App. at 1-18.) He argues that the Service's alleged breach of the preliminary WRPO denied him his retained rights of quiet enjoyment and of recreational uses. The plaintiff has clarified that he "is not objecting to 'maintenance of the easement property' per se. [He] is objecting to the failure of the NRCS to deliver on their promises listed in [the preliminary WRPO.]" (Pl.'s Resp. to Renewed Mot. to Dismiss at 7 (quoting Def.'s Renewed Mot. to Dismiss at 8).) At issue is whether the preliminary WRPO provided the plaintiff the right to challenge the Service's conservation activities after conveying the easement.

The plaintiff conveyed and relinquished to the United States "any and all other property rights not so reserved" by the easement deed. (*Id.* at 2.) The plaintiff, as he correctly asserts, reserved the right of quiet enjoyment and right of recreational uses. (*Id.* at 3.) Those rights, however, are "[s]ubject to the rights, title, and interest conveyed by this easement deed to the United States, including the restoration, protection, management, maintenance, enhancement, and monitoring of the wetland and other natural values of the easement area . . . ." (*Id.*)

The WRP Manual provided that when the NRCS acquired an easement, the WRPO "does not supersede or modify the rights acquired by NRCS under the terms of the warranty easement deed." WRP Manual § 514.40(B). In the easement deed, the United States acquired the right to carry out the "altering of grassland, woodland, wildlife habitat or other natural features by burning, digging, plowing, disking, cutting or otherwise destroying the vegetative cover." (Def.'s Renewed Mot. to Dismiss, App. at 4.) The "Prescribed Burning" provision of the preliminary WRPO, at issue here, provided for the NRCS to conduct controlled burns "as needed to maintain vigor of grass cover, suppress the growth of undesirable species, remove any dead or decaying woody plants and/or remove excessive thatch buildup." (Pl.'s Resp. to Mot. to Dismiss at 7.) The "Prescribed Burning" provision does not supersede or modify the right subsequently acquired by the United States in the easement deed for the identical activity, and the easement deed does not grant the plaintiff the right to challenge those activities. *See Big Meadows*, 344 F.3d at 943 n.4 (finding that the NRCS easement nowhere granted the landowner the power to veto a conservation plan of which it disapproved).

The easement deed does not, by its terms, incorporate the provisions of the preliminary WRPO. There is no basis in the statute, regulations, or Manual, on which to infer the incorporation of the preliminary WRPO into the easement deed. Accordingly, the plaintiff is unable to show that the terms of the preliminary WRPO, which are, in any event, changeable at the Service's sole discretion, are part of the easement deed.

### IV.  PROMISSORY ESTOPPEL

The *pro se* plaintiff's complaint could be construed to include a claim arising under the theory of promissory estoppel. Promissory estoppel requires a "promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance . . . ." Restatement (Second) of Contracts § 90(1) (1981).

The plaintiff alleges that "Mr. Blackwell lured [him] into the WRP program with false hopes, expectations, and promises with a worthless signature . . . ." (Pl.'s Resp. to Renewed Mot. to Dismiss at 5.) The plaintiff, in substance, alleges that he relied on the terms of the preliminary WRPO and Mr. Blackwell's statements in entering the WRP program. He appears to allege that he is entitled to damages for harm caused by the defendant's failure to abide by the promises made by Mr. Blackwell and included in the preliminary WRPO. If the Court were to construe the complaint as invoking a claim for promissory estoppel, that claim would be outside this Court's limited jurisdiction under the Tucker Act.

This Court's jurisdiction is limited to express or implied-in-fact contract claims.[4] *Hercules Inc. v. United States*, 516 U.S. 417, 423 (1996). This court has held that promissory estoppel "requires the court to find an implied-in-law contract, a claim for which the United States has not waived its sovereign immunity."[5] *Steinberg v. United States*, 90 Fed. Cl. 435, 443 (2009). Accordingly, the Court does not have jurisdiction over claims arising from promissory estoppel. *Id.*; s*ee also Carter v. United States*, 98 Fed. Cl. 632, 638-39 (2011) ("As with other forms of equitable relief, we have no jurisdiction over claims of promissory estoppel.").

Therefore, to the extent that the plaintiff's claim can be construed as one relying on promissory estoppel, this Court does not have jurisdiction.

V. **CONCLUSION**

Because the plaintiff has failed to establish the existence of a binding contract with the United States for the removal of his brush, the Court cannot grant him the relief he seeks. Accordingly, the Court grants the defendant's motion to dismiss and, *sua sponte,* dismisses the complaint under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted.[6]

The Court will issue an order in accordance with this memorandum opinion.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**

---

[4] An implied-in-fact contract is "founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Baltimore & O.R. Co. v. United States*, 261 U.S. 592, 597 (1923).

[5] An implied-in-law contract is "where, by fiction of law, a promise is imputed to perform a legal duty, as to repay money obtained by fraud or duress . . . ." *Baltimore & O.R. Co.*, 261 U.S. at 597.

[6] The Court finds apparent the similarity between the signature pages on the "Preliminary WRP Restoration Plan" document (Pl.'s Resp. to Mot. to Dismiss at 8) and the "WRP Restoration Plan" document (Def.'s Renewed Mot. to Dismiss, App. at 21) provided by the defendant. The plaintiff claims that this apparent similarity constitutes fraud or forgery by the Service. The Court need not address this issue because the argument is not relevant to the plaintiff's breach-of-contract claim.